NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough – northern judicial district
No. 2014-071


THE STATE OF NEW HAMPSHIRE

v.

ARMANDO LISASUAIN

Argued: March 5, 2015
Opinion Issued: June 5, 2015


Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Sarah E. Newhall, assistant appellate defender, of Concord, on the brief and orally, for the defendant.


CONBOY, J. Following a jury trial in Superior Court (Garfunkel, J.), the defendant, Armando Lisasuain, was convicted of, among other offenses, two counts of aggravated felonious sexual assault, RSA 632-A:2, I(m) (2007). On appeal, the defendant argues that the trial court: (1) erred by finding that the State presented sufficient evidence to prove lack of consent by the victim on the aggravated felonious sexual assault charges; (2) may have erred by not disclosing more documents from its in camera review of certain of the victim's records; and (3) erred by not allowing cross-examination of a police officer as to the nature and duration of his interrogation of the defendant. We affirm.

The following facts are supported by the record. In October 2010, the 14-year-old victim was living with her mother and her siblings in Manchester. The 46-year-old defendant, a family friend, had been staying at the home a few nights each week after he had to move out of his cousin's apartment.

On October 23, the victim returned home from serving a school detention. No one was home and the victim lay down on the couch to watch television. The defendant arrived at the home and went over to the couch. The victim moved her feet so he could sit and then he said she could put her feet back. The defendant asked her if she liked foot rubs and she stated, "Yeah. My nanna gives them to me all the time." The defendant started rubbing her feet. The victim "didn't know what to think" when the defendant started giving her a foot rub, but "since [her] nanna gave them to [her] all the time, [she] didn't really think anything weird because . . . he was [her] dad's best friend [and] . . . [she] didn't look at him as a complete stranger." The defendant then asked if she ever got her toes sucked. She responded, "No." The victim thought the defendant's inquiry "was weird." When the defendant started sucking on her toes, the victim "was in shock."

The defendant told the victim that she was "dangerously beautiful," to which she did not respond because that scared her. The defendant told her that "he was going to tear [her] up," which the victim thought was "a sexual term," although she "didn't know exactly what he meant by it." The defendant had moved off the couch and he was "on his knees" below where the victim's head was on the couch. The defendant asked her "if he could go lower." The victim "assumed that he was talking about [her] vagina," but she didn't answer him because she "couldn't believe what was going on." The defendant then pulled her pants and underwear down and "moved [her] legs . . . on his shoulders or above his shoulders." The victim did nothing to help him and did not say anything. The defendant performed cunnilingus on her and penetrated her vagina with his fingers. He stopped when he got a telephone call and then he left.

The victim had been frequently skipping school and staying out all night. On November 2 she was placed by court order at Antrim Girls Shelter. After approximately two weeks, she told staff members and her mother that she had been sexually assaulted. The victim was subsequently transferred to Webster House, a long-term placement facility, and was interviewed at the Child Advocacy Center about the assaults.

At trial, following the close of the State's case, the defendant moved to dismiss the aggravated felonious sexual assault charges based upon alleged insufficiency of the evidence. He argued that because the victim did not testify that she pushed the defendant away or told him to stop or took any other kind of affirmative action to express that consent was not freely given, no reasonable jury could find that those charges were proven beyond a reasonable doubt.

The trial court denied the motion, ruling that, based upon the facts and circumstances presented, a reasonable jury could find a lack of consent. The court reasoned that the defendant

> was clearly the initiator. He engaged in all the activities. She was not in any way indicating that she was a willing participant in this and, plus, the age difference and the family relationship, all of those factors [come] into play that she was obviously surprised and – by this conduct from someone who she knew to be a friend of the family. All of that – all of those factors can be taken into consideration by the jury. And under those circumstances, I think a reasonable jury could find that her conduct, that is her – in essence, her lack of conduct . . . indicated that consent was not freely given.

Following the jury verdict, the defendant moved for judgment notwithstanding the verdict (JNOV), again challenging the sufficiency of the evidence of the victim's lack of consent. After a hearing, the trial court denied the motion, finding that "a rational jury could conclude beyond a reasonable doubt that the victim did not consent to the defendant's sexual conduct."

On appeal, the defendant first argues that the trial court erred by finding that the State presented sufficient evidence to show lack of consent by the victim on the charges of aggravated felonious sexual assault. According to the defendant, the trial court's ruling "conflicts with the plain language of the statute, which specifically requires that lack of consent be indicated by the victim either through words or conduct." Because the victim "neither said nor did anything at any point from the time [he] rubbed her feet until he completed performing cunnilingus and digital penetration," the defendant asserts that "there was no evidence of any speech or conduct by which the jury could find that she indicated lack of consent." The State contends that this argument is not preserved for appellate review, and even if it is, the evidence that the victim "did not answer the defendant's request for consent, did not assist him in getting her pants and underwear down and positioning her legs, and did not respond to, or actively participate in, the sexual acts was sufficient." We will assume, without deciding, that the defendant has preserved this issue for our review.

Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. State v. Kay, 162 N.H. 237, 243 (2011). In reviewing a sufficiency of the evidence claim, we view the evidence presented at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the State, and uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt. State v. Graham, 142 N.H. 357, 360 (1997).

RSA 632-A:2, I(m) provides:

> I.   A person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person under any of the following circumstances:
>
> . . . .
>
> (m) When at the time of the sexual assault, the victim indicates by speech or conduct that there is not freely given consent to performance of the sexual act.

RSA 632-A:2, I(m).  The defendant argues that the legislature "has chosen only to criminalize sexual penetration where there is an affirmative statement of non-consent, rather than criminalizing sexual penetration unless there is an affirmative statement of consent."  He asserts that the statute "requires that the State prove that the victim somehow, through verbal or physical action, communicate her lack of consent," and that the "legislature did not enact a statute that makes passive silence stand for lack of consent."  The State counters that the terms "conduct" and "indicates" are broad and that "under the plain language of the statute, a jury could reasonably conclude that [the victim] engaged in 'conduct' that 'indicated' that she was not consenting" when she did not answer his request for consent when he asked "if he could go lower," did not assist with getting her pants down and positioning her legs, and did not respond to, or actively participate in, the sexual acts.

Resolution of this issue requires that we engage in statutory interpretation.  The interpretation of a statute is a question of law, which we review de novo.  State v. Thompson, 164 N.H. 447, 448 (2012).  In matters of statutory interpretation, we are the final arbiters of the intent of the legislature as expressed in the words of a statute considered as a whole.  Id.  When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We construe the Criminal Code "according to the fair import of [its] terms and to promote justice."  RSA 625:3 (2007).

Black's Law Dictionary defines "conduct" to mean "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds."  Black's Law Dictionary 358 (10th ed. 2014) (emphasis added).  In this context, Webster's Third New International Dictionary defines "indicate" as meaning "to show the probable presence or existence . . . of  :  give fair evidence of  :  be a fairly certain sign or symptom of  :  reveal in a fairly clear way."  Webster's Third New International Dictionary 1150 (unabridged ed. 2002).

4

As the trial court found:

> Here, the 14-year-old victim's non-participation in the sexual acts performed on her by the 46-year-old defendant provides sufficient evidence of non-consent. When the defendant began to suck her toes; the victim did nothing. She did not give the defendant permission to suck her toes or help him to do so in any manner. The victim testified that she was too shocked by the defendant's action to say or do anything[.]

> Next, when the defendant asked if he could "go lower," the victim again did nothing. The victim did not take off her pants or underwear, she did not spread her legs open, she did not turn her body on the couch, and she did not put her legs on his shoulders. Instead, it was the defendant that physically did each of these acts to the victim without her aid.

> Finally, the victim did not respond to the defendant in a way that an intimate partner might respond. The victim did not discuss the sexual activity with the defendant, she did not make any verbal sounds suggesting she was participating in the activity, she did not touch the defendant or physically respond to him in any way.

After reviewing the record we hold that, taking into account the totality of the circumstances, the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that the victim's conduct, in failing to respond in any way, indicated that she did not consent to the sexual assaults by the defendant. See also RSA 632-A:6, III ("[a] jury is not required to infer consent from a victim's failure to physically resist a sexual assault"). Accordingly, we affirm the trial court's denial of the defendant's motion for JNOV based upon alleged insufficiency of the evidence.

The defendant next argues that the trial court may have erred in not disclosing more documents from the in camera review. Prior to trial, the defendant moved for in camera review of the victim's records from her school, the New Hampshire Department for Children, Youth and Families, and the Antrim Girls Shelter, as well as any juvenile, probation, and counseling records. He argued that any previous statements the victim made about the assaults, and any conduct probative of her truthfulness, was discoverable. Following a hearing, the trial court granted the motion in part, agreeing to review everything except the school records. Thereafter, the court ordered the disclosure of certain records that it concluded contained "information which [might] be regarded as essential and reasonably necessary to the defendant in preparing his defense to the . . . charges." The trial court subsequently also reviewed in camera documents provided by Webster House, Manchester Mental

Health, Easter Seals, and NFI-North Country Shelter, and ordered disclosure of certain additional documents.

The defendant does not appeal the trial court's refusal to review the school records, but he challenges "the scope of the release of documents," seeking to have this court review the other records to determine whether they contain information that would entitle him to a new trial. We review the trial court's decision to withhold records under the unsustainable exercise of discretion standard. See State v. Alwardt, 164 N.H. 52, 58 (2012); see also Desclos v. S. N.H. Med. Ctr., 153 N.H. 607, 610 (2006) (trial court's decisions on the management of discovery and the admissibility of evidence is reviewed under unsustainable exercise of discretion standard). "To prevail, the defendant must show the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case." State v. King, 162 N.H. 629, 631 (2011). Having reviewed all of the records reviewed by the trial court, we conclude that it did not unsustainably exercise its discretion in determining that those records not be disclosed. Accordingly, we hold that there was no error.

Finally, the defendant argues that the trial court erred by not allowing cross-examination of Officer Tremblay about the nature and duration of Tremblay's interview with him. At trial, the State questioned the officer on direct examination for the sole purpose of establishing the defendant's date of birth. When defense counsel attempted to cross-examine the officer, the State objected. Defense counsel made an offer of proof that when the officer challenged the defendant as to his knowledge of the victim's age, the defendant made no admissions. He asserted that the officer "used his skills and experience in interviewing suspects to tell [the defendant] in several different ways that having sex with a 16-year-old was legal," and that "he got no admissions." Defense counsel argued that the defendant's lack of an admission was admissible and that the officer's statements were not being offered for their truth. Defense counsel also sought to admit testimony about the length of the interview. The State argued that the defendant's lack of admissions were hearsay because his nonverbal conduct was being offered for the truth of whether there were no admissions. The State also argued that the length of the interview was not relevant because it was being introduced only to suggest that the defendant was cooperative or that he did not make any admissions. The trial court ruled that the lack of admissions was "excludable hearsay" because it was "nonverbal conduct and conveyed as an assertion of the truth."

We accord the trial court considerable deference in determining the admissibility of evidence, and we will not disturb its decision absent an unsustainable exercise of discretion. State v. Munroe, 161 N.H. 618, 626 (2011). "To demonstrate an unsustainable exercise of discretion, the defendant

6

must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case."  Id.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  N.H. R. Ev. 801(c).  "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."  N.H. R. Ev. 801(a).  Unless it falls within an exception, hearsay evidence is generally inadmissible.  See Munroe, 161 N.H. at 626.

We agree with the State that the nature and duration of the defendant's interview with the officer were relevant only to provide context for the lack of admissions.  Because the relevance of the evidence proffered by the defendant was dependent upon its truth – that the defendant's nonverbal conduct was intended as an assertion by him that he did not commit the sexual assaults – we hold that the trial court did not err in excluding evidence of the lack of admissions as inadmissible hearsay.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.