NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2014-0607


THE STATE OF NEW HAMPSHIRE

v.

LISA A. TAGALAKIS FEDOR

Argued: September 10, 2015
Opinion Issued: November 10, 2015


Joseph A. Foster, attorney general (Jason A. Casey, attorney, on the brief and orally), for the State.


Samdperil & Welsh, PLLC, of Exeter (Richard E. Samdperil on the brief and orally), for the defendant.


DALIANIS, C.J. The defendant, Lisa A. Tagalakis Fedor, appeals her conviction by jury of knowingly keeping or maintaining a common nuisance. See RSA 318-B:16 (2011). On appeal, she argues that the Superior Court (Abramson, J.) erred by denying her motion for judgment notwithstanding the verdict (JNOV), or, in the alternative, to set aside the verdict. We affirm.

Viewed in the light most favorable to the State, the record establishes the following facts. The defendant lived in Manchester with her boyfriend, Kristopher White, and her two children. In January 2013, White approached

the defendant about allowing Robert Doane to move in with them. Doane was an acquaintance of White's from whom White had purchased heroin. The defendant agreed to allow Doane to move into a spare bedroom in exchange for $100 per week. The defendant knew that Doane sold drugs and allowed him to continue to do so after he moved in, but asked him not to sell drugs inside the house.

After moving in, Doane began selling heroin on the street outside of the residence. When a prospective buyer stopped on the street, Doane would meet the buyer, and an exchange would occur. Inside the residence, Doane installed a padlock on his bedroom door, but the defendant had witnessed Doane in his bedroom, packaging heroin into "individual baggies." Doane, despite being a convicted felon, also obtained a stolen firearm that he kept in the house.

The defendant was charged with one count of conspiracy to commit the sale of a controlled drug and one count of knowingly keeping or maintaining a common nuisance. Following a four-day trial, the jury convicted her of maintaining a common nuisance and acquitted her of conspiracy. Subsequently, the defendant moved for JNOV, or, in the alternative, to set aside the verdict. The trial court denied her requests for relief, and this appeal followed.

The defendant first argues that the trial court erred when it denied her motion for JNOV. Specifically, she argues that the evidence presented at trial was insufficient to prove that her residence was "used for the selling of the controlled drug heroin" because "drugs were not sold from inside the residence." She also argues that the evidence was insufficient to support a finding that she "maintained a common nuisance under RSA 318-B:16" because she "did not control or 'maintain' Doane's padlocked room."

On a motion for JNOV based upon evidentiary insufficiency, the trial court must uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. State v. Spinale, 156 N.H. 456, 463 (2007). In considering a motion for JNOV, the trial court may not weigh the evidence or inquire into the credibility of the witnesses, and, if the evidence adduced at trial is conflicting, or if several reasonable inferences may be drawn, the motion should be denied. Id. The question of whether a JNOV is required because of insufficient evidence is a question of law. Id. at 464. On appeal, we review the record to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Id. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. State v. Lisasuain, 167 N.H. ___, ___, 117 A.3d 1154, 1158 (2015).

RSA 318-B:16 provides that:

> Any store, shop, warehouse, dwellinghouse, building, vehicle, boat, aircraft, or any place whatever which is resorted to by drug-dependent persons for the purpose of using controlled drugs or which is used for the illegal keeping or selling of the same shall be deemed a common nuisance.  No person shall knowingly keep or maintain such a common nuisance.

(Emphasis added.)  The indictment alleged that the defendant "knowingly kept or maintained a common nuisance, specifically, her home . . . was used for the illegal keeping or selling of controlled drugs."  (Bolding omitted.)  Because neither RSA 318-B:16, nor the penalty provision of the Controlled Drug Act, RSA 318-B:26 (2011) (amended 2013), provides a specific penalty for violating RSA 318-B:16, the defendant was charged with a class B felony.  See RSA 318-B:26, XI ("Any person who violates any provision of this chapter for which a penalty is not provided . . . shall be guilty of a class B felony if a natural person . . . .").

By means of a special verdict form, the jury found that the State had proven beyond a reasonable doubt that the defendant "knowingly kept or maintained her residence, that was used for" both the "keeping" and the "selling" of a controlled drug.  The defendant asserts that "[a]lthough the State presented evidence that the defendant's residence was used for the illegal keeping of a controlled drug, there was insufficient evidence that the dwelling itself was used for the illegal selling of drugs."  The defendant maintains that, with regard to "keeping" controlled drugs, the legislature superseded RSA 318-B:16 when it passed RSA 318-B:26, III(a).  See RSA 318-B:26, III(a) (stating that a person who "[c]ontrols any premises . . . where he knows a controlled drug or its analog is illegally kept or deposited" shall be guilty of a misdemeanor).  The defendant argues that, if the evidence is insufficient for a rational trier of fact to have concluded that a sale of heroin occurred in the residence, the defendant's felony conviction must be vacated and we must remand for sentencing as a misdemeanor under RSA 318-B:26, III(a).

The State concedes that RSA 318-B:26, III(a) supersedes RSA 318-B:16 in cases in which the only allegation is that a controlled substance was "kept" on the premises.  However, the State asserts that "maintaining a place used for the illegal selling of controlled drugs continues to be a class B felony prohibited by RSA 318-B:16."  Accordingly, we will assume, without deciding, that RSA 318-B:26, III(a) supersedes RSA 318-B:16 regarding "keeping" controlled drugs, and focus our analysis upon whether the evidence was sufficient to support the jury's conclusion that the defendant's house was "used for the . . . selling" of controlled drugs.  RSA 318-B:16.

3

Resolution of this issue requires us to engage in statutory interpretation. The interpretation of a statute is a question of law, which we review de novo. State v. Thompson, 164 N.H. 447, 448 (2012). In matters of statutory interpretation, we are the final arbiters of the legislative intent as expressed in the words of the statute considered as a whole. Id. When examining the language of the statute, we ascribe the plain and ordinary meaning to the words used. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. State v. Maxfield, 167 N.H. ___, ___, 117 A.3d 704, 706 (2015). We construe the Controlled Drug Act (Act) so as to carry out, not defeat, the manifest objective sought by the statute — the regulation of controlled drugs in all of its aspects. State v. Berger, 125 N.H. 83, 87 (1984).

Although the Act does not define the term "selling," the term "[s]ale" is defined as "barter, exchange or gift, or offer therefor, and each such transaction made by any person whether as principal, proprietor, agent, servant, or employee." RSA 318-B:1, XXX (2011). Additionally, "used" is defined, in relevant part, as "employed in accomplishing something." Webster's Third New International Dictionary 2524 (unabridged ed. 2002). Thus, the statute prohibits a broader range of behavior than just the physical exchange of a controlled drug. Under the plain language, the statute does not require that a "sale" take place inside the particular "dwellinghouse" in order for it to be deemed a common nuisance. See RSA 318-B:16. Rather, the statute provides that a dwellinghouse that is used to accomplish the selling of a controlled drug is a common nuisance. See id.

Here, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Doane used the defendant's residence to accomplish the sale of the controlled drug heroin. The defendant admitted to the police that she allowed Doane to move into the residence, knowing that he sold heroin, and with the agreement that he could continue selling heroin after moving in. Although, in her testimony, the defendant denied knowing that Doane sold heroin, the jury could have disregarded her explanation if it questioned her credibility. State v. Hull, 149 N.H. 706, 713 (2003).

After he moved in, Doane made the physical transfer of heroin outside the residence. There was testimony of approximately a dozen instances in which Doane sold heroin in this manner. On one occasion, the police observed a man who fit Doane's physical characteristics exit the residence, walk to a vehicle parked directly in front of the residence, and put his hands inside the passenger side window of the vehicle. When the man saw the police, he immediately went back inside the residence. The occupant of that vehicle admitted that he was attempting to purchase heroin from a man named "Rob."

4

Additionally, in the residence, Doane installed a padlock on his bedroom door. The defendant admitted to the police that she witnessed Doane in his bedroom, packaging heroin into individual bags. Finally, Doane purchased a stolen handgun that was recovered from inside the residence.

From this evidence, a rational trier of fact could have concluded that buyers traveled to the specific residence in order to purchase heroin. Furthermore, the jury could also have determined that Doane used the residence to prepare heroin for sale and to protect himself and the drugs he sold. Therefore, based upon all of the circumstances, we hold that the record contains sufficient evidence for a rational trier of fact to have concluded that the residence was "used for the . . . selling" of a controlled drug. RSA 318-B:16.

Additionally, we are not persuaded that, as the defendant argues, the evidence was insufficient for the jury to have concluded that the defendant "maintain[ed]" a common nuisance under RSA 318-B:16. The defendant, relying upon case law from another jurisdiction, equates the statute's use of the term "maintain" with "constructive possession" and argues that, "[b]ecause the State failed to prove that [she] exercised dominion or control over heroin in Doane's padlocked room," the motion for JNOV should have been granted.

The plain language of RSA 318-B:16 does not support the defendant's interpretation. The statute states that "[n]o person shall knowingly keep or maintain . . . a common nuisance." RSA 318-B:16. The term "maintain" applies to the place deemed a common nuisance, not to controlled drugs. See id. The statute does not require the defendant to have had possession, actual or constructive, of controlled drugs. See id. Further, a common nuisance is statutorily defined as "[a]ny store, shop, warehouse, dwellinghouse, building," used for the illegal conduct, and the statute sets forth no limitation as to illegal conduct occurring within rooms of a building. Id. In this case, the indictment alleged that the common nuisance was the defendant's "home" and not Doane's bedroom. Thus, the fact that Doane had a padlock on his bedroom door does not change our analysis. For these reasons, we are not persuaded that the trial court erred when it denied the defendant's motion for JNOV.

Finally, the defendant argues that the trial court erred by denying her motion to set aside the verdict "because the weight of the evidence supported a finding that [the defendant] did not know that Doane was using her home to sell heroin." "Although a verdict may be supported by sufficient evidence, a trial court may nevertheless conclude that the judgment is against the weight of the evidence." Spinale, 156 N.H. at 465 (quotation omitted). "The weight of the evidence is its weight in probative value, not the quantity or amount of evidence." Id. (quotation omitted). The trial court's assessment is basically a determination "that a greater amount of credible evidence supports one side of an issue or cause than the other." Id. (quotation omitted). "[A] motion

addressed to the weight of the evidence primarily presents a question of fact for the trial court" and, therefore, we "will uphold the trial court's decision unless it was made without evidence or constituted an unsustainable exercise of discretion."  Id. at 465-66.

Here, a police officer testified that the defendant admitted that she and Doane "had an agreement that he could sell heroin from the residence, but . . . she didn't want him to sell it from the house."  Thus, there was direct evidence that the defendant had knowledge that Doane used the residence to sell heroin. Although both White and the defendant testified that the defendant had no such knowledge, this does not compel a finding that the judgment was against the weight of the evidence, as the trial court could reasonably have found the testimony not credible.  The defendant testified that she had "[e]verything" riding on the outcome of this case and the trial court could reasonably have concluded that this undermined her credibility.  The trial court also could reasonably have found that White's credibility was questionable in light of his testimony that she was "the best thing that happened in [his] life."

The defendant also argues that, because the jury found the defendant not guilty of conspiracy to commit the sale of a controlled drug, it is "inconsistent and against the weight of that same evidence" to have found her guilty of common nuisance.  However, the conspiracy charge required the State to prove that the defendant acted "purposely," while the common nuisance charge required the State to prove that the defendant acted "knowingly." Compare RSA 629:3, I (2007) with RSA 318-B:16.  "'Knowingly' is a lesser mental state than 'purposely.'"  State v. Morabito, 153 N.H. 302, 306 (2006). Thus, the fact that the jury found the defendant not guilty of the conspiracy charge, but guilty of common nuisance, does not mean that the verdicts were inconsistent or against the weight of the evidence.  The jury may simply have determined that the State had not proven beyond a reasonable doubt that the defendant acted with the higher culpable mental state of "purposely" to support a guilty finding on the conspiracy charge.

For these reasons, we conclude that the trial court's denial of the defendant's motion to set aside the verdict was supported by the evidence at trial, and did not constitute an unsustainable exercise of discretion.

Affirmed.

CONBOY, LYNN, and BASSETT, JJ., concurred.

6