# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case Nos. 2016-0037 and 2019-0589, State of New Hampshire v. Tristan Wolusky, the court on September 15, 2021, issued the following order:

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Tristan Wolusky, appeals his conviction, following a jury trial, for first degree murder. See RSA 630:1-a, I(b)(2) (2016); RSA 626:8, II(c) (2016). The defendant argues that the Superior Court (Houran, J.) erred when it: (1) denied his requests to conduct pre-trial depositions of the State's cooperating witnesses; (2) did not compel one of the State's cooperating witnesses to answer interrogatories before trial; and (3) denied his three motions to set aside the verdict. We affirm.

## I. Facts

The following facts are undisputed or are otherwise supported by the record. In 2014, the defendant was charged with several offenses, including first degree murder as a principal and an accomplice. See RSA 630:1-a, I(b)(2); RSA 626:8, II(c). The State alleged that the defendant, acting in concert with Zachary Pinette and/or Michael Tatum, knowingly caused the death of the victim before, after, or while engaged in the commission of a robbery while armed with a knife, and that the victim's death was caused by the knife. Pinette and Tatum pled guilty to multiple charges, including second degree murder, and agreed to testify for the State at the defendant's trial.

Before trial, the defendant moved to depose Pinette and Tatum. The defendant argued that depositions were necessary in order to understand the witnesses' "subjective belief[s] . . . with regard to their reward for 'cooperating'" with the State. The defendant also argued that depositions were necessary because the case was complex and Pinette and Tatum had offered inconsistent accounts of the incident that led to the charges.

The trial court denied the motions, ruling that the defendant had failed to demonstrate that the depositions were "necessary to ensure a fair trial, avoid surprise or for other good cause shown." See RSA 517:13, II(b) (2007). The court found that the defendant failed to demonstrate that the depositions were necessary because he had sufficient alternative means to obtain the information that he sought, and failed to articulate how the case was

"especially complex." The court observed that the defendant had access to the witnesses' plea colloquies and written agreements with the State, in addition to all recordings and/or transcripts of their statements and interviews with the State.

Also before trial, the State disclosed to the defendant that, during an interview, Tatum had informed the State that prior to the incident leading to the charges, he had told the defendant that he had previously committed robbery. The defendant sought to depose Tatum about his statements to the defendant regarding any prior robberies he had committed. The trial court permitted the defendant to propound written interrogatories to Tatum "limited to the discrete issue of his statement to [the defendant], prior to the charged conduct, that Tatum had committed a robbery in the past." Tatum responded to the interrogatories by asserting his constitutional privilege against compelled self-incrimination. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. V, XIV. The defendant argued that Tatum's assertion of the privilege directly conflicted with the defendant's right to confront the witnesses against him. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. The defendant requested that Tatum be prohibited from testifying unless he fully answered the interrogatories. The trial court ruled that it would not prohibit Tatum from testifying, concluding that any potential conflict between Tatum's self-incrimination rights and the defendant's confrontation rights would be resolved at trial. At trial, after direct examination and outside the presence of the jury, and after the State offered Tatum "use immunity," the court ordered him to answer the defendant's questions about the prior robbery.

Following trial, the defendant filed motions to set aside the verdict as against the weight of the evidence and because the State had offered allegedly perjured testimony. The defendant argued, in essence, that no reasonable jury could have credited the testimony of Pinette or Tatum because they each made numerous inconsistent statements, they contradicted each other, and their testimony was contradicted by other witnesses and physical evidence from the victim's body. The defendant also argued that Pinette had committed perjury because "his testimony was at odds with the physical evidence" in that he testified that the victim "was stabbed multiple times in the front," but "there were no such injuries," and he testified that the defendant had stomped on the victim's head with work boots, but a medical examiner testified that such an action could not have occurred. The defendant further asserted that, before trial, Pinette had "failed" polygraph examinations, and therefore the State should have known that his testimony would be perjurious.

The trial court denied the motions. The court ruled that, even assuming that a reasonable jury would not have found substantial portions of Tatum's testimony to be credible, and even if the jury had rejected certain portions of

Pinette's testimony, "the inconsistencies and contradictions highlighted by [the defendant]" did not "so undermine the jury's weighing of the evidence that the jury's guilty verdict . . . was against the weight of the evidence." See State v. Spinale, 156 N.H. 456, 466 (2007). In addition, the court found that the State had not suborned perjury, ruling that the defendant's arguments regarding "perjured" testimony went "to the weight and credibility of [Pinette's] testimony."

The defendant also filed a motion for a new trial based on ineffective assistance of trial counsel. The trial court appointed counsel to assist with the motion and held a hearing on the merits. Thereafter, the court denied the motion, ruling that the performance of the defendant's trial counsel was not constitutionally deficient, but was, rather, "constitutionally effective." The court found that, notwithstanding the verdict, defense counsel had effectively attacked Pinette's and Tatum's credibility and successfully highlighted many contradictions between their testimony and the physical evidence. The court concluded that it had "no basis upon which it could determine that trial counsel's trial performance on behalf of [the defendant] 'failed to function as the counsel the State Constitution guarantees.'" (Quoting State v. Candello, 170 N.H. 220, 225 (2017).)

II. Analysis

On appeal, the defendant argues that the court erred when it: (1) denied his requests to conduct pre-trial depositions of Pinette and Tatum; (2) did not prohibit Tatum from testifying or compel him to answer interrogatories before trial regarding the prior robbery; and (3) denied his three motions to set aside the verdict.

A. Pre-Trial Depositions and Interrogatories

We first address the defendant's argument that the trial court erred when it denied his requests to depose Pinette and Tatum. The defendant asserts that, because the State had "unfettered access" to Pinette and Tatum before trial, the State had information not available to him, and depositions were therefore "necessary to create a level playing field." We disagree.

"A defendant does not have an unqualified due process right to compel depositions in a criminal case." State v. Fernandez, 152 N.H. 233, 236 (2005). Rather, the trial court may permit a defendant to depose a witness "upon a finding by a preponderance of the evidence that such deposition is necessary . . . [t]o ensure a fair trial, avoid surprise or for other good cause shown." RSA 517:13, II(b). "In determining the necessity, the court shall consider the complexity of the issues involved, other opportunities or information available to discover the information sought by the deposition, and any other special or

3

exceptional circumstances which may exist." Id. We evaluate the trial court's decision to deny depositions for an unsustainable exercise of discretion. State v. Oakes, 161 N.H. 270, 277 (2010). To prevail, the defendant must demonstrate that the decision "was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted).

The trial court concluded that the defendant failed to demonstrate that the pre-trial depositions were necessary, and the record supports its determination. As the trial court found, the defendant had "other opportunities or information available to discover the information sought by the deposition[s]." RSA 517:13, II(b). Because, as the defendant acknowledged, he was given all the audio and video recordings and/or transcripts of the witnesses' statements and police interviews, the trial court reasonably could have found that he "knew in advance of trial of the inconsistencies in the witnesses' statements" and had "ample information to prepare his defense." Fernandez, 152 N.H. at 236 (quotation omitted) (affirming trial court's decision to deny depositions when the State had provided the defendant with transcripts and recordings of witnesses' interviews). Here, as in Fernandez, "[t]he record demonstrates that the trial court weighed the statutory factors and properly ruled that the defendant had not met his burden of establishing necessity." Id. (quotation and brackets omitted). Accordingly, we cannot conclude that the trial court's decision is unsustainable.

To the extent that the defendant argues the trial court erred when it did not prohibit Tatum from testifying or compel him to answer his interrogatories regarding the prior robbery before trial, we are unpersuaded. As the appealing party, the defendant has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned order, the defendant's challenges to it, the relevant law, and the record submitted on appeal, we conclude that the defendant has not demonstrated reversible error. Id.

To the extent that the defendant specifically contends that the trial court erred by ignoring "the fact that the State was repeatedly meeting with the cooperating witnesses[,] . . . failing to write reports or produce notes regarding these meetings[,] . . . [and] confront[ing] [the witnesses] with contradictions and inconsistencies so they could correct their statements," we decline to address his argument because he has failed to demonstrate that he preserved it for our review. As the appealing party, the defendant has the burden of providing this court with a record that demonstrates that he raised his appellate issues before the trial court. Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). The record submitted on appeal does not demonstrate that the defendant made this argument in the trial court. Accordingly, we decline to address it.

4

B. Motions to Set Aside the Verdict

1. Weight of the Evidence

Next, we address the defendant's argument that the trial court erred when it denied his motion to set aside the verdict as against the weight of the evidence. The defendant argues that the court erred because no reasonable jury could have found any portion of Pinette's or Tatum's testimony to be credible.

"Although a verdict may be supported by sufficient evidence, a trial court may nevertheless conclude that the judgment is against the weight of the evidence." State v. Fedor, 168 N.H. 346, 352 (2015) (quotation omitted). "The weight of the evidence is its weight in probative value, not the quantity or amount of evidence." Id. (quotation omitted). "The trial court's assessment is basically a determination that a greater amount of credible evidence supports one side of an issue or cause than the other." Id. (quotation omitted). "A motion addressed to the weight of the evidence primarily presents a question of fact for the trial court." Id. (quotation and brackets omitted).

We review a trial court's denial of a motion to set aside the verdict as against the weight of the evidence under our unsustainable exercise of discretion standard. State v. Durgin, 165 N.H. 725, 734 (2013). In so doing, we give deference to the trial court's decision. Id. "After all, the trial judge conducts the trial, observes the witnesses and the jury, and is in a better position than we are to evaluate the whole atmosphere of a trial, much of which cannot be gleaned from that portion of the proceedings that is reducible to a cold record." Id. (quotation omitted). "Whether we, sitting as trial judges, would have reached the same or a different result is immaterial." Id. (quotation omitted). "In the doubtful cases, we should defer to the trial court's judgment." Id. (quotation and brackets omitted).

The trial court found that the State carried its burden of persuasion. As it explained, because the defendant was charged both as a principal and an accomplice to first degree murder, to convict him, the State

> had to persuade the jury beyond a reasonable doubt that as principal [he] knowingly caused [the victim's] death with a deadly weapon used in the attempted commission of the robbery, or that as accomplice he knowingly aided Pinette and/or Tatum in causing [the victim's] death with a deadly weapon used in the attempted commission of the robbery.
>
> At the outset, [the defendant] admitted that he conspired with Pinette and Tatum to rob [the victim] and attempted to carry out that robbery . . . . This admission was corroborated by Pinette's

5

and Tatum's testimony, as well as cell phone and text message records. [The defendant] also conceded that he did not object when Pinette and Tatum suggested bringing knives to the robbery. . . . [The defendant also] testified that he had his knife with him in the vehicle. . . . Pinette, Tatum, and [the defendant] all testified that [the defendant] initiated the physical attack on [the victim] by putting him in a choke hold, bringing him to the ground, choking him and threatening him to give up his money. Pinette testified that [the defendant] continued to restrain [the victim] by holding him on the ground while Tatum stabbed [the victim] in the back and Pinette hacked [the victim] with a machete and stabbed him with a knife. The jury could reasonably infer from this testimony, to the exclusion of reasonable conclusions consistent with innocence, that [the defendant] was aware of Pinette's and Tatum's violent attack upon [the victim] occurring while he continued to restrain [the victim]. . . . The medical examiner corroborated some of the details of the attack . . . .

This evidence demonstrated that [the defendant] was aware of the presence of deadly weapons before the commission of the robbery began and of the intent to use them to intimidate their robbery victim, that [he] actively participated by initiating the physical attack on [the victim], holding him down while he was slashed and stabbed, and later pushing [him] to the ground a second time, and aided Pinette and Tatum by restraining [the victim] on the ground with knowledge of an ongoing prolonged, violent attack involving deadly weapons brought for the commission of the robbery. . . .

The verdict was also supported by substantial evidence of [the defendant's] consciousness of guilt. [The defendant] himself admitted his guilt on the hindering apprehension charges based on his false statements to investigators. His testimony [and that of another] also persuasively demonstrated that he had attempted to prevent Tatum from testifying at his trial. [The defendant] further admitted to helping Pinette and Tatum dispose of or destroy physical evidence of the crimes, including principally the crime of murder, by disposing of [the victim's] body. Thus, ample persuasive, probative evidence supported the jury's verdict.

(Citations omitted.)

Having reviewed the record, we conclude that it establishes an objective basis to support the trial court's decision. See id. at 735. Accordingly, we will not disturb it. See id. "This is not one of those exceptional cases where the

jury failed to give the evidence its proper weight," but rather is a "classic jury case, in which the jury examined and properly weighed the conflicting evidence" to conclude that the defendant committed first degree murder.  Id. (quotations omitted).

### 2.  Allegedly Perjured Testimony

Next, we address the defendant's argument that the trial court erred when it denied his motion to set aside the verdict on the ground that the State knowingly presented Pinette's allegedly perjured testimony that the defendant stomped on the victim's head, and that the victim had been stabbed in the "chest/gut area."  He contends that this testimony was perjured because it was contrary to the physical evidence from the victim's body and the testimony of the medical examiner.  We disagree.

"A finding that a witness lied on the stand depends on an assessment of the witness's credibility, and such assessment is for the factfinder."  State v. Yates, 137 N.H. 495, 498 (1993).  Here, "the factfinder was the trial court" because the question of Pinette's credibility "was presented to it in [the defendant's] motion to set aside the verdict."  Id.  We will affirm the trial court's finding so long as there is evidence to support it.  State v. Etienne, 163 N.H. 57, 97 (2011).

First, as the trial court observed, Pinette did not actually testify that the victim had been stabbed in the chest or stomach.  Rather, he testified that he had not been honest with police when he previously told them that he saw Tatum stab the victim in the stomach.  He also testified that he had previously told police that he saw the defendant stab the victim in the chest, and that he believed that representation to be true when he made it, but that he now recognized that he had been mistaken.  Thus, some of the testimony that the defendant alleges was perjured did not, in fact, occur.

Moreover, although Pinette did testify that the defendant stomped on the victim's head, and this testimony was contradicted by the medical examiner, the fact that Pinette's testimony was contradicted does not necessarily mean that he committed perjury.  Even if a witness's testimony is, in fact, false, a witness commits perjury only if the witness "does not believe the statement to be true."  RSA 641:1, I (2016) (emphasis added).  As federal courts have recognized, "[p]erjury is not established by mere contradictory testimony from witnesses or inconsistencies in a witness's testimony."  Rimkus Consulting Group, Inc. v. Cammarata, 688 F. Supp. 2d 598, 648 (S.D. Tex. 2010); see Lyon v. Senkowski, 109 F. Supp. 2d 125, 130, 140 (W.D.N.Y. 2000) ("While the contrast between the coroner's testimony and [the informant's] may arguably have cast doubt on the latter's description of the crime, it falls short of demonstrating that [the informant] perjured himself, much less that the prosecution knowingly adduced perjured testimony from [the informant].").

7

Here, the trial court found that, although Pinette's testimony was contradicted, which undermined his credibility, this discrepancy failed to establish that he committed perjury. The record supports the trial court's finding. The trial court, having presided over the trial and observed the witnesses, was in the best position to assess their credibility and determine whether Pinette knowingly testified falsely. See Spinale, 156 N.H. at 466. We will not disturb the court's finding that he did not.

### 3. Ineffective Assistance

Finally, the defendant argues that the trial court erred when it denied his motion for a new trial based on ineffective assistance of trial counsel. As the appealing party, the defendant has the burden of demonstrating reversible error. Gallo, 166 N.H. at 740. Based upon our review of the trial court's well-reasoned order, the defendant's challenges to it, the relevant law, and the record submitted on appeal, we conclude that the defendant has not demonstrated reversible error. Id. All issues raised in the defendant's notice of appeal, but not briefed, are deemed waived. See State v. Stanin, 170 N.H. 644, 652 (2018).

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

8