# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0503, <u>State of New Hampshire v. Nicholas Nieuwkoop</u>, the court on December 28, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The defendant, Nicholas Nieuwkoop, appeals his conviction by a jury of aggravated felonious sexual assault (AFSA), <u>see</u> RSA 632-A:2, I(m) (2016), arising out of a sexual encounter with the victim when both were University of New Hampshire (UNH) students. The defendant was indicted, in relevant part, for "having sexual intercourse with [the victim] when, at the time of the sexual assault, [the victim] indicated by speech or conduct that there was not freely given consent to the performance of the sexual act." The defendant contends on appeal that the Superior Court (<u>Howard</u>, J.) erred by denying his motion to dismiss and his post-trial motion for judgment notwithstanding the verdict (JNOV), which included an alternative argument to set aside the verdict as against the weight of the evidence. We affirm.

I

The jury could have found or the record otherwise supports the following facts. In September 2020, the victim was a first-year student at UNH and lived in a dorm with her roommate, L.H. C.S., a hometown friend of the victim who also went to UNH, invited her to an off-campus party scheduled for September 19, 2020. Leading up to the party, the victim began drinking a "pretty big" bottle of vodka. The victim brought the vodka with her to the party and continued to drink it. The victim rode to the party with C.S. and some of his other friends, including the defendant. The victim did not know the defendant.

Once at the party, the victim almost finished the bottle of vodka, drank about one fourth of a bottle of wine, and "shotgunned" a beer. After drinking the beer, the victim testified that she "black[ed] out," meaning that she had no further memory of the evening aside from "a very few spurts of things." At the party, C.S. observed the victim become intoxicated. He testified that on a scale of one to ten, with ten being the most intoxicated he had ever seen someone, that the victim was at a "nine or ten" by the time they left the party. C.S. told men at the party, including the defendant, that the victim was "really drunk and not to try anything on my friend." C.S. decided to leave the party and bring the victim to his nearby apartment to get her "away from drinking."

The defendant eventually arrived at the apartment, where the victim continued to present as "really drunk" and could not speak coherently. The victim indicated that she might need to throw up, so C.S. and the defendant helped the victim to the bathroom because she could not manage on her own. C.S. attempted to get the victim a ride back to her dorm. The defendant volunteered to get an Uber to take the victim to her dorm as he was a Resident Assistant (RA) at a dorm neighboring the victim's dorm. The victim needed help from both C.S. and the defendant to make her way from C.S.'s apartment to the Uber as she was "too drunk."

A group of students who knew the victim saw the defendant help her exit the Uber outside the defendant's dorm. The group noticed that the victim was holding a trash bag in front of her and was walking unsteadily. The group observed the victim to be very intoxicated and that she had a strapless bra around her waist. The group observed the defendant help the victim walk towards the defendant's dorm. One student asked the defendant what he was doing but the defendant did not respond. The student physically directed the defendant and the victim towards the victim's dorm. The defendant eventually entered the victim's dorm with the victim at 12:48 a.m. Although the victim's phone was later found in the bathroom just past her dorm room, the victim never entered her dorm room that night. At 12:57 a.m., the defendant returned to the defendant's dorm with the victim.

At 1:00 a.m., the defendant began texting with L.H. The defendant said that the victim was in his room, was "really f**ked up," and could "barely walk." The defendant said that he wanted "her to sit down and sober up." The defendant informed L.H. that he was an RA and "promise[d] [the victim is] good" and that he would not "let anything happen to her." L.H. told the defendant that she did not know him and did not "want anything to happen to [the victim] at all . . . because [the victim] cannot make a decision like that right now." The defendant responded that he understood and that he was "not trying to do anything like that."

The victim awoke the next morning in the defendant's bed, wearing only a thong, with the defendant's arms around her. The victim immediately vomited into a nearby trash bin. She testified that she felt "terrible" and intoxicated. She said that certain memories from the evening came back to her after waking up. She recalled throwing herself into a bathroom stall in her dorm and that she had urinated herself. She remembered a brief instant of opening her eyes and feeling the defendant having sex with her at a time when it was still dark outside. She also remembered waking up and vomiting all over the bed when "it was transitioning into the morning."

After waking up, the victim noticed that the bed and windowsill, along with her body and hair, were covered in her vomit. When she put on her clothes, she noticed her "pants were covered in urine." She left the room and

2

went to her dorm.  Once there, she retrieved her phone from another resident who had found it in a bathroom stall in the victim's dorm.  Through Snapchat, she asked the defendant if they had sex and if they used protection.  The defendant answered yes to both questions.  The victim subsequently reported the sexual encounter to UNH health officials, and, ultimately, the police.

At trial, following the close of the State's case, the defendant moved to dismiss the indictment for insufficiency of the evidence.  The defendant argued that the indictment required evidence of affirmative speech or conduct communicating a lack of consent and that the evidence showed neither.  The State argued that because the defendant acknowledged the victim was severely intoxicated at 1:00 a.m., and the sex occurred sometime between 1:00 a.m. and dawn, that "reason and common sense would lead any rational juror to find that . . . that situation is not going to change so significantly . . . after 1 a.m."  The State argued that the statute does not require affirmative action and that the victim's conduct implied "that she does not consent because she can't consent at that stage because she is too intoxicated."  The trial court denied the motion.  The jury returned a verdict of guilty on the "consent not freely given" AFSA charge.

Following the jury verdict, the defendant moved for JNOV, and alternatively, to set aside the verdict as against the weight of the evidence, again challenging the sufficiency of the evidence of the victim's lack of consent.  The trial court denied the motion, finding that "[t]he jury could have concluded, beyond a reasonable doubt, that the defendant knew that the victim's level of intoxication, as demonstrated by her conduct, rendered her unable to exercise a reasonable judgment as to the sexual act."  This appeal followed.

II

On appeal, the defendant first argues that the evidence was insufficient because: (1) the window of time during which the sexual intercourse could have occurred was too long for the jury to rule out the rational conclusion that by the time it occurred, the defendant was not subjectively aware that the victim was incapable of freely giving consent; and (2) the State presented no evidence of conduct at the time of the sexual intercourse indicating lack of ability to freely consent.

When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State.  State v. Saintil-Brown, 172 N.H. 110, 117 (2019).  The trier of fact may draw reasonable inferences from facts proved as well as from facts found as the result of other inferences, provided they can be reasonably drawn therefrom.  Id.  We examine each evidentiary item in the

context of all the evidence, and not in isolation. Id. Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id.

The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. Id. When, as in this case, the evidence as to one or more elements of the charged offense is solely circumstantial, a defendant challenging sufficiency must establish that the evidence does not exclude all reasonable conclusions except guilt. Id. The proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. Id.

RSA 632-A:2, I(m) provides:

I. A person is guilty of the felony of aggravated felonious sexual assault if such person engages in sexual penetration with another person under any of the following circumstances:
. . .
(m) When at the time of the sexual assault, the victim indicates by speech or conduct that there is not freely given consent to performance of the sexual act.

We have defined "indicate" in this context to mean "to show the probable presence or existence . . . of: give fair evidence of: be a fairly certain sign or symptom of: reveal in a fairly clear way." State v. Lisasuain, 167 N.H. 719, 723 (2015) (quotations omitted). We have defined "conduct" in this context to mean "personal behavior, whether by action or inaction, verbal or nonverbal; the manner in which a person behaves; collectively, a person's deeds." Id. (quotations and emphasis omitted). Therefore, to convict the defendant of this AFSA variant, the State needed to prove that at the time of the sexual act, the victim revealed in a fairly clear way behavior demonstrating that consent to performance of the act was not freely given.

The defendant points out that there was an approximately eight-hour window for the sexual intercourse to occur in this case, between around 1:00 a.m. when the victim and the defendant arrived at his dorm room and around 9:00 a.m. when they awoke. The defendant suggests this window of time is limited by the victim's testimony that the sex occurred while it was still dark, shortening the window by a couple of hours. From this, the defendant concludes that the evidence fails to rule out the "reasonable conclusion that [the defendant] did not know that [the victim] was still incapable of exercising reasonable judgment" at the time of intercourse. Relatedly, the defendant also argues that "[t]here was absolutely no evidence of [the victim] manifesting any conduct at the time of the intercourse indicating her inability to consent due to continuing alcohol intoxication."

4

Although there was no direct evidence at trial that at the time of the intercourse the victim demonstrated by her conduct that she could not freely consent, there was overwhelming circumstantial evidence on this point. As described above, the victim's severe intoxication was evident throughout the night, and notably, was directly observed by the defendant on multiple occasions. Indeed, the defendant confirmed by text messages beginning at 1:00 a.m. that the victim was severely intoxicated such that she could "barely walk" while she was with him in his dorm room. The victim testified that upon waking up the next morning, she felt intoxicated and immediately vomited. Her lack of memory of the night's events further indicates her severe intoxication over the course of the night. When the evidence is viewed in the light most favorable to the State, it is not reasonable to conclude that the victim had sobered to a point where she could freely give consent at the time the defendant had sex with her. Accordingly, we conclude the defendant has failed to meet his burden to demonstrate that the evidence was insufficient to prove guilt.

The defendant next challenges the trial court's denial of his motion to set aside the verdict as against the weight of the evidence. Although a verdict may be supported by sufficient evidence, a trial court may nevertheless conclude that the judgment is against the weight of the evidence. State v. Spinale, 156 N.H. 456, 465 (2007). The weight of the evidence is its weight in probative value, not the quantity or amount of evidence. Id. It is basically a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other. Id.

We review a trial court's denial of a motion to set aside the verdict as against the weight of the evidence under our unsustainable exercise of discretion standard. State v. Durgin, 165 N.H. 725, 734 (2013). In so doing, we give deference to the trial court's decision. Id. "After all, the trial judge conducts the trial, observes the witnesses and the jury, and is in a better position than we are to evaluate the whole atmosphere of a trial, much of which cannot be gleaned from that portion of the proceedings that is reducible to a cold record." Id. (quotation omitted). "Whether we, sitting as trial judges, would have reached the same or a different result is immaterial." Id. (quotation omitted). "In the doubtful cases, we should defer to the trial court's judgment." Id. (quotation and brackets omitted).

Having reviewed the record, we conclude that it establishes an objective basis to support the trial court's decision denying the defendant's motion to set aside the verdict. Accordingly, we will not disturb that decision. See id. at 735. "This is not one of those exceptional cases where the jury failed to give the evidence its proper weight. Rather this was a classic jury case, in which the jury examined and properly weighed the conflicting evidence to conclude" that the defendant committed the AFSA for which he was convicted. See id. (quotations omitted). Any issues that the defendant raised in his notice of

5

appeal, but did not brief, are deemed waived.  See State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**