Strafford
No. 91-499

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM A. YATES, II

August 5, 1993

*John P. Arnold*, attorney general (*Jeffrey A. Meyers*, assistant attorney general, on the brief, and *Cynthia White*, assistant attorney general, orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J.   The defendant, William A. Yates, II, appeals the Superior Court's (*Nadeau*, J.) denial of his motion to set aside the jury's verdict of guilty on a burglary charge. Yates alleges that he was convicted on the basis of false testimony in violation of the due process clauses of the fifth and fourteenth amendments to the United States Constitution. We reverse.

Yates was convicted of burglarizing a condominium belonging to Gary Wirt and Joyce LeVeck. At trial, Yates testified that he did not commit burglary because Wirt gave him permission to break into the condominium and take certain things. *See* RSA 635:1, I (1986). Yates explained that Wirt owed him money for a cocaine sale, but apparently lacked the cash to settle the debt. When Yates demanded the money, Wirt told him to go into his home and appropriate items worth the amount owed. According to Yates, Wirt instructed him to make his entrance look like a break-in so that Wirt could recover the value of the property "stolen" from his insurance carrier.

At trial, Wirt's testimony differed from Yates' in almost every material respect. He denied giving Yates permission to enter his condominium and take things, denied owing Yates money for cocaine, and

denied ever having *anything* to do with illegal drugs. LeVeck also denied giving Yates permission to enter the condominium but admitted she smoked marijuana regularly. While she stated she had never known Wirt to *use* illegal drugs, she acknowledged that Wirt kept cocaine paraphernalia in the condominium.

An indictment charging Wirt with possession of an illegal drug was in fact pending at the time of trial, based on information obtained from Yates and a subsequent search of Wirt's home, during which drugs and drug paraphernalia were found. Wirt, however, apparently assured the prosecutor before trial that he had never been involved with illegal drugs. The State acknowledges that both the prosecutor and the defense counsel knew of Wirt's indictment before the trial began. Neither attorney, however, brought the indictment to the attention of the court or the jury. The State made no effort to inform the judge or jury of the pending indictment, which indicated that the State believed Wirt was probably involved in drug activity. This information would have undermined Wirt's testimony that he had had *no* involvement with illegal drugs. Since Wirt's credibility on the issue of whether he had granted permission to Yates to enter his residence was critical to the jury's determination of Yates' guilt, the jury was deprived of essential evidence in deciding whether to believe Wirt's testimony.

The jury found Yates guilty, and Yates moved to set the verdict aside, arguing among other things that Wirt testified falsely and that his conviction was based on this false testimony in violation of his right to due process. The trial court denied Yates' motion, stating:

> "While it is clear Gary Wirt testified falsely under oath, there was more than sufficient evidence from which the jury could conclude that the defendant and Gary Wirt were engaged in a joint venture, under which the defendant supplied drugs to Wirt in exchange for payment, and that Gary Wirt was indebted to the defendant in the amount of $750.00, and that the defendant, without authorization, decided to enter his home for the purpose of removing sufficient property to cover the debt.
>
> While the Court is appalled at the obvious willingness of Gary Wirt to testify falsely under oath, his story was so incredible that it had to be patently transparent to the jury.
>
> The jury heard all of the witnesses, however, and obviously concluded that the portion of Wirt's testimony [in] which he denied an insurance scam and asserted the defendant had no license or privilege to enter the premises was

credible. That testimony with all of the other direct and circumstantial evidence, was sufficient to justify a verdict of guilty.

The County Attorney's office has responded that they will review the record of this case and will make a determination whether or not Gary Wirt shall be charged with perjury. This Court urges a thorough investigation into that issue."

Yates appealed.

■ The relevant law governing this case is set forth in *Napue v. Illinois*, 360 U.S. 264, 269 (1959):

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.

The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend."

(Citations omitted.) The State asserts that, in order to win relief under *Napue*, Yates must establish that (1) Wirt testified falsely, (2) the testimony was material to the verdict, and (3) the prosecutor knew at trial that the testimony was false. We hold that Yates satisfied the three-pronged test propounded by the State.

■ The trial court found that Wirt did, in fact, testify falsely when he denied any involvement in illegal drugs. A finding that a witness lied on the stand depends on an assessment of the witness's credibility, and such assessment is for the factfinder. *See Bourdon's Case*, 132 N.H. 365, 370, 565 A.2d 1052, 1055 (1989). In this instance, the factfinder was the trial court because the question of Wirt's credibility was presented to it in Yates' motion to set aside the verdict. After reviewing the transcript of Wirt's testimony, we conclude that the trial court correctly found that Wirt testified falsely concerning his involvement with illegal drugs.

■ Second, we hold that Wirt's false testimony was material to Yates' conviction. Although the trial court found that "there was

more than sufficient evidence from which the jury could conclude" that Yates entered Wirt's home without authorization, the test for resolving Yates' claim is not whether the jury's verdict is supported by sufficient evidence, but whether there is any reasonable likelihood that the false testimony could have affected the verdict. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). It may be enough for the defendant to show that exposing the lie during trial could have damaged the credibility of the witness. *Napue*, 360 U.S. at 269. Here, Yates' entire defense depended on the premise that Wirt owed him money from a cocaine sale. Had the jury been told that Wirt was under indictment for illegal drug use, there is certainly a reasonable likelihood that the jury would have doubted the remainder of his testimony and formed a reasonable doubt as to Yates' guilt. *See id.*

We also conclude that Yates established a knowing prosecutorial use of Wirt's material, false testimony. The State concedes that the prosecutor knew before trial that Wirt had been indicted for drug possession, based on information supplied by Yates and the search of Wirt's home. As the State points out, an indictment is not proof of guilt, but it is evidence that the county attorney believes an individual is *probably guilty* of committing the acts charged. *Cf.* N.H. R. PROF. CONDUCT 3.8(a) (prosecutor shall refrain from prosecuting a charge that prosecutor knows is not supported by probable cause). Contrary to the State's contention, Yates does not have to prove that the prosecutor here had actual knowledge of Wirt's illegal drug use. Yates need only show that the prosecutor *believed* Wirt's testimony was probably false. *See May v. Collins*, 955 F.2d 299, 315 (5th Cir.), *cert. denied*, 112 S.Ct. 1925 (1992); *United States v. Mills*, 704 F.2d 1553, 1565 (11th Cir. 1983), *cert. denied*, 467 U.S. 1243 (1984); *cf. Giglio*, 405 U.S. at 154 (knowledge of one attorney in prosecutor's office attributed to other attorneys in office). A lawyer's duty of candor to the tribunal, N.H. R. PROF. CONDUCT 3.3(a)(3), is neglected when the prosecutor's office relies on a witness's denial of certain conduct in one case after obtaining an indictment charging the witness with the same conduct in another case.

The State maintains that Yates cannot complain of fundamental unfairness now because he knew at trial that Wirt had been indicted on a drug charge, yet chose not to cross-examine him about it. The prosecutor, however, declared at the post-trial hearing that he should have filed a motion *in limine* to prevent introduction of any evidence of Wirt's illegal drug activities, including the indictment. The State cannot now successfully argue that Yates should have

cross-examined Wirt about the indictment when the prosecutor would have likely objected to such a tactic. In any event, the final responsibility rested with the prosecutor, not Yates, to bring to the attention of the court and the jury the State's official position that Wirt was indeed probably involved with illegal drugs, and his testimony to the contrary was probably false. *See* 4 P. MCCLOSKEY & R. SCHOENBERG, CRIMINAL LAW ADVOCACY ¶ 1.02[1], at 1–5 (1990). "The duty to correct false testimony is on the prosecutor, and that duty arises when the false evidence appears." *United States v. Foster*, 874 F.2d 491, 495 (8th Cir. 1988) (quotation omitted); *cf. State v. Brunette*, 501 A.2d 419, 423-24 (Me. 1985) (prosecutor did not solicit false testimony and informed judge and defense counsel of perjury when it appeared; as jury never learned of perjury, however, defendant was denied due process). The prosecutor's failure to inform the trial court and jury about Wirt's probable use of drugs, and hence his probable false testimony, resulted in a denial of federal due process and in reversible error.

*Reversed and remanded.*

THAYER, J., dissented; the others concurred.

THAYER, J., dissenting: From the majority's reasoning and result, I must dissent. I agree that a prosecutor's knowing use of perjured testimony is to be considered under the standard enunciated in *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972), and that a defendant's conviction should be overturned if any reasonable likelihood exists that testimony known to be perjurious could have affected the judgment of the jury, absent harmless error, *see United States v. Bagley*, 473 U.S. 667, 679–80 (1985); *United States v. Rewald*, 889 F.2d 836, 861 (9th Cir. 1989), *cert. denied*, 498 U.S. 819 (1990). I cannot, however, agree with the majority's application of that rule to the record in this case.

The defendant contends that his conviction was based on allegedly perjured testimony, thus violating due process rights afforded him by the Federal Constitution. The majority concludes that the prosecutor knowingly offered perjured testimony, presumably because the defendant "show[ed] that the prosecutor *believed* Wirt's testimony was probably false." Contrary to the majority's analysis, the defendant cannot meet his burden of proof by showing that "the prosecutor *believed* Wirt's testimony was probably false," for the burden on the defendant is to show (1) the testimony was actually false; (2) the statement was material; and (3) the prosecution *knew* it was false. *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.

1989); *see also Jacobs v. Singletary*, 952 F.2d 1282, 1286–87 (11th Cir. 1992); *Smith v. Black*, 904 F.2d 950, 961 (5th Cir. 1990), *vacated on other grounds*, 112 S. Ct. 1463 (1992) (Fifth Circuit "has long abided" by standard requiring knowing use of perjured testimony); *United States v. Pandozzi*, 878 F.2d 1526, 1532 (1st Cir. 1989) (where government does not know which version of witness's testimony is true, no use of false testimony); *United States v. Kattar*, 840 F.2d 118, 128 (1st Cir. 1988) ("government is precluded from using evidence that is known *to the government* to be false"); *United States v. Kaufmann*, 803 F.2d 289, 291-92 (7th Cir. 1986) (trial court determined on remand that witness did not know he was testifying falsely and prosecution did not know testimony was false; motion for new trial denied).

It is not enough to show the prosecutor *believed* the testimony was false; the test is *knowledge* of the falsity. *See Napue*, 360 U.S. at 269 (prosecution's knowing use of perjured testimony violates fourteenth amendment to United States Constitution); *Giglio*, 405 U.S. at 153 (knowing use of false testimony incompatible with "rudimentary demands of justice"). Accordingly, a showing that a prosecutor believed certain testimony to be perjured does not meet the federal standard.

The sole basis for the majority's conclusion that the prosecutor knowingly offered perjured testimony is the fact that the witness was under indictment for a drug-related offense. Yet, an indictment does not stand as unassailable proof that the person who has been indicted is guilty of the allegations contained in the indictment. An indictment, standing alone, is an insufficient factual basis upon which the prosecutor can be charged with knowingly offering perjured testimony when the witness testifies contrary to the allegations contained in the indictment. Based on the evidence in the record, I cannot conclude that the prosecutor knowingly offered perjured testimony.

Even more troubling, however, is the majority's interpretation of the scope of the defendant's due process rights based on United States Supreme Court precedents. The Supreme Court cases which form the basis of the rule that the prosecution's knowing use of perjured testimony violates due process are based on factual circumstances quite different from those in the present case.

In *Mooney v. Holohan*, 294 U.S. 103 (1935), the defendant discovered that the State prosecutor knowingly offered perjured testimony, a fact which the defendant "could not by reasonable diligence have discovered prior to the denial of his motion for a new trial." *Id.* at 110. In *Napue v. Illinois*, the principal State witness testified that

he received no promise of consideration in return for his testimony. After the defendant was convicted, a former Assistant State Attorney filed a petition indicating that he promised the witness that if the witness testified against Napue, he would seek to reduce the witness's sentence. *Napue*, 360 U.S. at 266. In *Giglio v. United States*, the government's witness testified that no one told him that he would not be prosecuted if he testified against the defendant. In the government's closing argument, the prosecutor stated that the witness received no promises that he would not be indicted. *Giglio*, 405 U.S. at 152. After the defendant's conviction, the government filed an affidavit which confirmed that an Assistant United States attorney had promised the witness that he would not be prosecuted if he testified before the grand jury and at trial. *Id.* In each of these cases, the defendant was unaware of the false testimony, and in both *Napue* and *Giglio*, the defendant was unable to effectively cross-examine the witness because of the false testimony.

The majority has chosen to overlook the essential fact that the defendant *himself* was the source of the evidence that culminated in Wirt's indictment. In his motion to suppress a confession made without the benefit of *Miranda* warnings, the defendant included a paragraph about the search warrant that was executed at the condominium shared by Wirt and LeVeck, and he attached a copy of a police report that described what was seized from the residence. Therefore, the defendant knew, well before the trial even began, of the opportunity to cross-examine the witness and impeach his credibility based on the search warrant and the seizure of evidence from Wirt's home. The majority takes the position that defense counsel also knew of the indictment against Wirt, thereby providing the defense with more impeachment evidence. *Cf. United States v. Hicks*, 848 F.2d 1, 4 (1st Cir. 1988) (defendant cannot complain about lack of helpful evidence where he had the evidence at his disposal and chose not to use it).

*Mooney*, *Napue*, and *Giglio* stand for the proposition that a prosecutor's use of perjured testimony, which is unknown to the defendant at trial, violates the defendant's due process rights because use of such testimony is fundamentally unfair to the defendant. These cases, however, do not provide guidance for situations where the prosecution used false testimony, but the defendant knew, at trial, that the testimony was false. I in no way condone the knowing use of perjured testimony; however, when such is the case, the defendant is not, as the majority holds, automatically entitled to a new trial. Because the defendant in this case had the ability to cross-examine the

witness and impeach his credibility, I would hold that the defendant had a fair trial and would not reverse his conviction. I cannot support setting a precedent that allows defendants to sit on their rights and then claim they were somehow wronged by the judicial system.

Because, in my view, the defendant has not met his burden of proof by showing that the prosecutor knowingly used perjured testimony, the standard of review enunciated in *Napue* and *Giglio* does not control this case. Rather, the defendant's claim should be analyzed under *United States v. Bagley*, 473 U.S. 667. The defendant argues that the prosecutor's failure to disclose the fact that Wirt was under indictment deprived him of due process. To be entitled to a new trial, the defendant must show that the nondisclosed evidence is material. "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682; *see also United States v. Agurs*, 427 U.S. 97, 112–13 (1976).

The defendant cannot prove that the nondisclosed evidence was material. The analysis used to determine whether evidence is material is made by focusing on what would have happened if the exculpatory evidence had been disclosed to the defendant. In this case, providing the defendant with the exculpatory evidence that Wirt had been indicted would not lead to a different result because the defendant already knew of the evidence against Wirt and chose not to use it. *See United States v. Sanchez*, 917 F.2d 607, 617–68 (1st Cir. 1990) (adopting *Bagley* standard of materiality), *cert. denied*, 111 S. Ct. 1625 (1991) *cf. Ouimette v. Moran*, 942 F.2d 1, 10–12 (1st Cir. 1991) (prosecution suppressed "star witness's" criminal record and violated defendant's due process rights). Because the defendant cannot show that the exculpatory evidence is material, the defendant is not entitled to a new trial.

I must also dissent because the practical effect of the majority opinion requires prosecutors, out of fear of being accused of offering false testimony, to point out their witnesses' *every inconsistency* even when the defendant is aware of the inconsistencies. Defendants will be relieved of the burden of cross-examination, for the prosecutor now stands as a guarantor of his or her witnesses' testimony. The burden of impeaching the prosecution's witnesses rests properly with the defendant, for ours is an adversarial system.

I would uphold the dismissal of the defendant's motion to set aside the verdict.