# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

### In Case No. 2022-0361, <u>State of New Hampshire v. Ryan Beaudry</u>, the court on June 3, 2024, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The defendant, Ryan Beaudry, was convicted, following a jury trial in Superior Court (<u>Tucker</u>, J.), on charges of aggravated felonious sexual assault and felonious sexual assault for acts committed against multiple victims under the age of thirteen. <u>See</u> RSA 632-A:2, II, :3, III (2016) (amended 2020). He argues that the trial court erred by not dismissing the charges or setting the verdicts aside for insufficient evidence and as contrary to the weight of the evidence. He further challenges the trial court's denial of his motion for a new trial based upon alleged "prosecutorial overreaching." We affirm.

We first address the defendant's argument that the trial court erred by not dismissing the charges or setting the verdicts aside based upon the sufficiency and weight of the evidence. At the outset, we note that at no point in his brief does the defendant identify any element of any crime for which the State failed to introduce evidence from which a rational jury could have found the element to exist. <u>See</u> <u>State v. Spinale</u>, 156 N.H. 456, 463-64 (2007) (explaining sufficiency of the evidence standard). Instead, he argues that the jury could not reasonably have credited the evidence relied upon by the State to prove his guilt because: (1) there was evidence that he had limited opportunities to engage in the crimes, including evidence that a friend of one of the victims was almost always present; (2) the State did not call an investigating police officer to testify, and there was no evidence that any police officer interviewed the friend who was almost always present; (3) one of the State's witnesses deleted a material text message from a relevant text message exchange before providing the exchange to law enforcement; (4) the victims provided inconsistent statements to the police; and (5) the jury returned a guilty verdict on a charge that the trial court subsequently dismissed for insufficient evidence. Indeed, in his reply brief, the defendant suggests that the State incorrectly relies upon the legal standard applicable to a post-verdict challenge to the sufficiency of the evidence, asserting that his argument is that the jury "did not properly weigh the evidence resulting in an improper verdict." Accordingly, although the defendant frames his argument, in part, as a challenge to the sufficiency of the evidence, we construe his brief, in substance, to be challenging the weight of the evidence only. <u>See id</u>. at 463-67 (distinguishing challenges to sufficiency of the evidence from challenges to the weight of the evidence). To the extent the defendant also intends to challenge the sufficiency of the evidence, we conclude that the evidence, when considered

in the light most favorable to the State, was sufficient for a rational trier of fact to find guilt beyond a reasonable doubt.  See id. at 463.

A verdict that is contrary to the weight of the evidence is one that no reasonable jury could return.  Id. at 465.  The issue concerns whether the State carried its burden of persuasion at trial.  Id.  In ruling on a motion to set aside a jury's verdict as contrary to the weight of the evidence, the trial court "sits as a 'thirteenth juror'" and determines whether it agrees with the jury's resolution of conflicting evidence.  Id. (quotation omitted).  Unlike a challenge to the sufficiency of the evidence, which raises a question of law subject to de novo review, a challenge to the weight of the evidence raises a question of fact within the trial court's discretion.  Id. at 464-65.  We have cautioned trial judges to grant new trials based upon weight-of-evidence concerns only in "exceptional cases in which the evidence preponderates heavily against the verdict" and "where a miscarriage of justice may have resulted."  Id. at 466 (quotations omitted).  "The trial court should not disturb the jury's findings unless the jury clearly failed to give the evidence its proper weight."  Id.

We will uphold the trial court's decision on a challenge to the weight of the evidence unless it was made without evidence or constituted an unsustainable exercise of discretion.  Id.  We defer to the trial court's determination, recognizing that the trial judge observes the witnesses and the jury and is in a better position than we are "to evaluate the whole atmosphere of a trial."  Id. (quotation omitted).  Indeed, we give greater deference to a trial court's decision denying a motion to set aside a jury verdict as contrary to the weight of the evidence than to one granting such a motion because a decision granting a motion to set aside a jury verdict results in usurping the primary function of the jury as the trier of fact.  Id.

Notwithstanding the defendant's claims that the State's witnesses were not credible and that he lacked an opportunity to commit the charged crimes, this is not an "exceptional case" in which the evidence preponderated heavily against the verdict and a miscarriage of justice may have resulted.  See id. at 466.  To the contrary, the jury had before it not only evidence establishing the elements of the charged crimes, but also corroborating certain aspects of the victims' testimony.  Upon this record, we cannot conclude that the trial court's decision rejecting the defendant's weight-of-evidence arguments was without evidence or constituted an unsustainable exercise of its discretion.  See id.

We next address the defendant's argument that the trial court erred by denying his motion for a new trial based upon alleged "prosecutorial overreaching."  A witness for the State testified that, prior to the victims' disclosures of the defendant's crimes, the witness woke up one night between 11:00 p.m. and 12:00 a.m., got up to use the bathroom, and discovered the defendant lying on top of one of the victims in the victim's bedroom with his face approximately one inch from the victim's face.  The witness told the

2

defendant to get off of the victim and asked what he was doing, to which the defendant replied that he was looking for fingernail clippers. During the morning following this incident, the witness sent the defendant two text messages in succession: (1) "What were you doing in [the victim's] room last night I was so confused with what was going on I just saw you like on top of" the victim; and (2) "Or thought I did." The defendant replied, "I was digging in [the victim's] bed [']cause [the victim] thought [the victim] had the nail clippers in there we couldn't find them so I told [the victim] to go to bed and gave [the victim] a hug."

Approximately a week later, after the victims disclosed the defendant's crimes, the witness told the police about the text exchange. Although a police officer told the witness to save the text messages, before providing the text exchange to the police during the course of its criminal investigation, the witness deleted the second text message in which the witness had said, "Or thought I did." The State did not know about the missing text message until the Saturday or Sunday prior to the start of trial, when the prosecutor was preparing the witness for trial and was reviewing the discovery provided by the defendant, which included the same text exchange captured from the defendant's phone. The defendant's trial counsel was aware of the missing text, however, and had provided it to the State as part of reciprocal discovery "believing the prosecutors may not notice the discrepancy," and hoping to confront the witness with the deleted text at trial.

Upon discovering the missing text, the prosecutor showed the witness both versions of the text exchange, asked the witness if the witness noticed the discrepancy, and told the witness that the witness should be prepared to answer questions at trial regarding the discrepancy. The State was not aware of the reason for the discrepancy, however, or that the witness had deleted the "Or thought I did" message, and did not ask the witness to explain the discrepancy as part of the trial preparation. At trial, the State quoted the entire text exchange, including the message, "Or thought I did," in its opening statement, stating that the jury would hear evidence that the entire exchange had occurred. During the witness's direct examination, the State introduced both versions of the text exchange, published the two exhibits to the jury in a side-by-side manner, asked the witness to highlight the difference between the exhibits, and established from which phones the exhibits were obtained. On cross-examination, the witness testified that the witness had deleted the "Or thought I did" message after being instructed by the police to save the text messages. This was the first time that the State learned that the witness had, in fact, deleted the missing text message.

On these facts, the defendant argues that the witness engaged in the crime of falsifying physical evidence. See RSA 641:6 (2016). Relying principally upon State v. Bujnowski, 130 N.H. 1 (1987) and State v. Yates, 137 N.H. 495 (1993), the defendant further argues that the State had duties to (1)

learn during its witness preparation that the witness had in fact deleted the text message, and (2) tell the jury that the witness had engaged in the crime of falsifying physical evidence. We disagree that the State engaged in prosecutorial overreaching.

To constitute "prosecutorial overreaching," the State "must have, through gross negligence or intentional misconduct, caused aggravated circumstances to develop which seriously prejudiced a defendant, causing the defendant reasonably to conclude that continuation of the tainted proceeding would result in his conviction." Bujnowski, 130 N.H. at 4 (quotation omitted). The State may not knowingly use false evidence to obtain a conviction, or allow known false evidence introduced at trial to go uncorrected even when the State did not solicit the false evidence. See Yates, 137 N.H. at 498. A defendant may obtain a new trial based upon uncorrected false testimony if it is established that a witness testified falsely, the false testimony was material to the verdict, and the State knew at trial that the testimony was false. See id.

In this case, the prosecutor quoted the entire text exchange, including the "Or thought I did" message, in its opening statement, effectively representing to the jury that it would receive evidence that the witness had in fact sent the deleted message. The prosecutor then introduced the text exchange captured from both the witness's and the defendant's phones, established from whose phone each version of the text exchange had been captured, and highlighted that the version captured from the witness's phone was missing the message stating "Or thought I did" after the message telling the defendant that the witness saw him on top of the victim. At that point, the prosecutor did not know why the text exchange captured from the witness's phone was missing a message captured from the defendant's phone, or that the witness had deleted the message after being told by a police officer to save the text messages.

The defendant cites no authority standing for the proposition that the prosecutor was obligated, under the circumstances of this case, to interrogate the witness and determine whether and when the witness had deleted the message, or to accuse the witness before the jury of engaging in felony conduct. Nor are we aware of any such authority. To the extent the defendant argues that the State necessarily believed that the witness's testimony — regarding the witness seeing the defendant on top of the victim — was false because the witness had suggested some doubt in the deleted text message as to what the witness had seen, we disagree. We note that the statement that the witness "thought" the witness saw the defendant on top of the victim is implied in the prior message stating that the witness saw the defendant on top of the victim and was confused by what the witness had seen. Moreover, as the defendant himself admitted on cross-examination, he did not respond to the "Or thought I did" message by stating that the witness did not really see him on top of the victim. Instead, he answered the question regarding what he was doing when

4

the witness thought the witness had seen him on top of the victim by stating that he was "digging" around the victim's bedsheets looking for nail clippers.

On this record, the State did not offer known "false" evidence, or otherwise engage in "prosecutorial misconduct." To the extent the defendant also argues that the State engaged in prosecutorial misconduct by vouching for the witness's credibility when the prosecutor stated, during closing argument, that the witness was "not lying," see Bujnowski, 130 N.H. at 4, we note that at no time during the closing argument after the prosecutor made this statement did the defendant object on the basis that it constituted improper witness vouching, see State v. Hearns, 151 N.H. 226, 232 (2004) (stating that to preserve objection to closing argument, counsel must raise the objection when the improper statement is made or within a reasonable time thereafter). Even if the defendant had objected to the statement, however, when read in context, the statement did not amount to improper witness vouching, but was part of a proper credibility argument by the State. Compare Bujnowski, 130 N.H. at 3, 6 (prosecutor's repeated comments that "I think" a witness was lying and "I think" the defendant is guilty, even after being warned by the trial court not to make such statements, constituted improper vouching), with State v. Bureau, 134 N.H. 220, 222, 223-24 (1991) (distinguishing Bujnowski on the basis that the prosecutor's single statement that the victim was telling "the truth" did not amount to continued statements of personal opinion, but was part of a proper credibility argument).

Affirmed.

MacDonald, C.J., and Bassett, Donovan, and Countway, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**