NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
Case No. 2023-0118
Citation: State v. Roy, 2025 N.H. 7


THE STATE OF NEW HAMPSHIRE

v.

ROGER ROY

Argued: October 10, 2024
Opinion Issued: February 7, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.


COUNTWAY, J.

[¶1] The defendant, Roger Roy, appeals the Superior Court's (Nicolosi, J.) denial of his motion to set aside guilty verdicts, in which he argued that the State knowingly used false evidence that resulted in his convictions.  We reverse and remand.

[¶2] The trial court found the following facts. The defendant was charged in connection with offenses he was alleged to have committed against the victim, an intimate partner, between July 14 and July 16, 2019. After a multi-day jury trial, the defendant was found guilty of one count of felony domestic violence - criminal threatening with a deadly weapon, see RSA 631:2-b, I(e) (2016) and four counts of misdemeanor domestic violence - simple assault, see RSA 631:2-b, I(a) (2016).

[¶3] The defendant appealed to this court, and we affirmed his convictions. State v. Roy, 174 N.H. 622, 623 (2021). With irrefutable evidence that some of the victim's testimony at trial was false, the defendant filed a motion to set aside the verdicts on the basis that the State knew the victim's testimony was false but failed to correct it at trial. He appeals the trial court's denial of that motion.

[¶4] The defendant and the victim became romantically involved in late 2018. The victim testified that the parties broke up and had no contact for a few months until the defendant contacted her on July 14, 2019. The defendant disputed who initiated the contact.

[¶5] In a pretrial hearing, the parties argued about whether to admit text messages between the victim and the defendant. The first message in the series is dated July 13, but contains no year or day of the week. The next message is dated July 14. Again, no year is recorded, though the day of the week is noted as Sunday. The prosecution informed the court that when the victim first reviewed the messages, she believed they were from 2018. In its order on the defendant's motion to set aside the verdicts, however, the trial court noted that "the tenor of the argument" was that the messages were from 2019. At trial, the court allowed the defendant to cross-examine the victim with the messages, ruling that they were pertinent to the victim's state of mind about the relationship and the defendant in July 2019.

[¶6] When confronted with the text messages, the victim testified that they were from 2018, not 2019. Despite a vigorous cross-examination, the victim maintained that the messages were exchanged in 2018. In fact, however, these text messages could not have been exchanged in 2018, because in July 2018, the defendant was in pretrial detention at the Hillsborough County House of Corrections pending trial on an unrelated charge (the "2018 charge").

[¶7] In ruling on the motion to set aside the verdicts, the trial court found that the victim's testimony as to the year of the messages was wrong and "did not present as an innocent mistake." It concluded, however, that the defendant did "not establish[] a knowing use of perjured testimony," and accordingly denied the defendant's motion to set aside the verdicts. On appeal, the defendant argues that the trial court erred when it denied his motion to set

2

aside the verdicts because the State knowingly used false evidence that resulted in his conviction.

[¶8] "[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." Napue v. Illinois, 360 U.S. 264, 269 (1959); State v. Yates, 137 N.H. 495, 498 (1993). The same is true "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue, 360 U.S. at 269. We review questions of constitutional law de novo, State v. Long, 169 N.H. 283, 286 (2016), and accord deference to the trial court's factual findings and credibility determinations. See Yates, 137 N.H. at 498.

[¶9] "To prevail on his Napue claim, [the defendant] bore the burden of showing that: (1) testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." Dickey v. Davis, 69 F.4th 624, 636 (9th Cir. 2023) (quotation and ellipses omitted). The trial court found, and it is undisputed on appeal, that the victim's testimony as to the year of the text messages was false and the prosecution failed to correct it. Thus, resolution of this case requires an assessment of materiality and the prosecution's knowledge.

I. Materiality

[¶10] A defendant is entitled to a new trial if the false testimony could in any reasonable likelihood have affected the judgment of the jury. Giglio v. United States, 405 U.S. 150, 154 (1972) (quotation and ellipses omitted); see Yates, 137 N.H. at 499. The defendant argues, and we agree, that this standard of review is equivalent to the harmless-error standard. See United States v. Bagley, 473 U.S. 667, 679 n.9 (1985) (opinion of Blackmun, J.). To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Boudreau, 176 N.H. 1, 11 (2023).

[¶11] Our analysis in Roy demonstrates that the defendant's conviction for domestic violence - criminal threatening with a deadly weapon turned upon the victim's testimony. In the direct appeal on the merits, the defendant challenged his conviction for domestic violence – criminal threatening with a deadly weapon, arguing that there was no evidence he used or threatened to use a weapon. Roy, 174 N.H. at 623-25. We noted that "[t]he victim testified that the defendant 'used to always carry a gun' with him, that he acted as if he had one by grabbing his waistband whenever she tried to get up," and that "the defendant told her that he had a gun." Id. at 624-25. We determined that from the evidence, the jury "could reasonably infer that, although the victim never saw a gun, the defendant had one on his person," and that "when the defendant threatened to kill the victim, he intended to do so by using the gun he admitted to having with him, and that she knew he 'used to always' carry on

3

him." Id. Accordingly, we concluded that "the evidence and all reasonable inferences therefrom viewed in the light most favorable to the State, were sufficient to establish, beyond a reasonable doubt, that the defendant impliedly threatened to use a gun against the victim." Id. at 625. As our analysis in Roy demonstrates, the victim's testimony was material to the defendant's felony conviction.

[¶12] For both the felony and misdemeanor convictions, the defendant argues that if the jury had known that the victim lied about the year of the text messages, it would have undermined her credibility. The State asserts the defendant undermined the victim's credibility through cross-examination, which was more effective than if the State had corrected the testimony.

[¶13] At trial, the defendant wanted to use the text messages to impeach the victim with her prior statement to police that before meeting with the defendant on July 14, 2019, she was "sketchy" about getting together with him. Because the victim testified that the messages were from 2018, the defendant was unable to impeach that statement. Therefore, the victim's false testimony deprived the defendant of the ability to discredit the victim. Bagley, 473 U.S. at 675 (determining that impeachment evidence is "evidence favorable to an accused, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal" (citation and quotation omitted)).

[¶14] Further, "[i]t may be enough for the defendant to show that exposing the lie during trial could have damaged the credibility of the witness." Yates, 137 N.H. at 499. We determine here that had the falsity of the victim's testimony been exposed before the jury, there is a reasonable likelihood that the jury could have doubted the remainder of her testimony and formed a reasonable doubt as to the defendant's guilt. See id. (concluding that the witness's false testimony was material to the defendant's conviction where there was a reasonable likelihood that the jury would have doubted the remainder of witness's testimony and formed a reasonable doubt as to defendant's guilt).

[¶15] Even if, as the State argues, there was sufficient evidence from which the jury could convict, "the test for resolving [the defendant's] claim is not whether the jury's verdict is supported by sufficient evidence, but whether there is any reasonable likelihood that the false testimony could have affected the verdict." Id. We cannot say, beyond a reasonable doubt, that the false testimony in this case did not affect the verdicts. Accordingly, the failure by the State to correct the victim's false testimony was not harmless error. We therefore conclude that the testimony was material.

4

## II. The State's Knowledge

[¶16] Having concluded that the false testimony was material, we turn to whether the prosecution knew or should have known at trial that the evidence was false. See Dickey, 69 F.4th at 636; Bucci v. United States, 662 F.3d 18, 39-40 (1st Cir. 2011).

[¶17] The trial court accepted as true that the State was not aware of the 2018 pretrial detention. However, even accepting the same, we agree with the defendant that the State should have known the defendant was subject to pretrial detention at the time. The State in this case was aware of the earlier prosecution. During plea negotiations, the State indicated that if a plea bargain were not reached, a motion would be filed to impose the suspended prison sentence from the earlier prosecution. Following trial, the State moved to impose the defendant's suspended sentence from a 2018 charge and recounted details from the earlier prosecution, including that the defendant pleaded guilty in August 2018. At the sentencing hearing, the State detailed the defendant's criminal history and noted that he had 94 days of pretrial detention credit in August 2018 when he pleaded guilty to the 2018 charge. We conclude that the State should have known of the July 2018 pretrial detention.

[¶18] Accordingly, we hold that the State should have known that the text messages were not from 2018 and that the victim's testimony to that effect was false. Because we determine that the State should have known of the falsity, we need not address the defendant's assertion that the State had imputed knowledge.

## III. The Defendant's Knowledge

[¶19] The State argues that because the defendant was aware of the year of the text messages and his attorney was able to cross-examine the victim, granting the defendant a new trial in these circumstances "allows defendants to sit on their rights and then claim they were somehow wronged by the judicial system." Yates, 137 N.H. at 503 (Thayer, J., dissenting).

[¶20] In Yates, we held that it is the prosecutor's duty to correct false testimony, and that duty arises when the false evidence appears. Yates, 137 N.H. at 499-500 (concluding that even where the defendant knew of the falsity at trial and chose not to cross-examine the witness about it, "the final responsibility rested with the prosecutor, not [the defendant]"). The First Circuit Court of Appeals, however, considers a Napue claim waived when "a defendant has actual knowledge of the false testimony and fails to correct it, absent unusual circumstances." United States v. Vega, 813 F.3d 386, 391 (1st Cir. 2016).

5

[¶21] We find it important to strike a balance between placing the burden on defendants and allowing defendants to sit on their rights by not raising the issue. Therefore, when a defendant has knowledge of the falsity, we will consider the circumstances of the conviction in assessing whether the State is absolved of its obligation under Napue. See Gomez v. Com'r of Correction, 243 A.3d 1163, 1174 (Conn. 2020). Such considerations may include:

> whether it is the prosecution or the defense that elicits the false testimony, whether and how the prosecutor adopts and uses the false testimony, the importance of the witness and his or her false testimony to the [S]tate's case, whether – and to what effect – defense counsel tries to impeach the perfidious witness or whether counsel has a clear tactical reason for not doing so, and most important, whether the truth ultimately is revealed to the jury.

Id. Here, the defendant elicited the false testimony and the State did not adopt or use the false testimony. However, the State's case depended upon the credibility of the victim's testimony, as explained above. The trial court even stated that "[t]his case turned largely on the word of [the victim]." Although defense counsel did cross-examine the victim and try to impeach her, when he did so, the victim maintained the lie. Because the truth was not exposed on cross-examination, the victim's testimony remained uncorrected and the truth was not ultimately revealed to the jury. Thus, we find that the defendant's knowledge did not absolve the State of its duty to correct the testimony.

[¶22] In conclusion, we find that the victim's false testimony was material to the convictions and the State should have known that the testimony was false. We reverse the denial of the defendant's motion to set aside the verdicts. We remand for a new trial on the count of domestic violence - criminal threatening with a deadly weapon and four counts of domestic violence - simple assault.

Reversed and remanded.

BASSETT and DONOVAN, JJ., concurred.